[S. F. No. 3386.    Department One.—April 1, 1903.]

In the Matter of the Estate of PATRICK DOUGHERTY, Deceased.    EDWARD DOUGHERTY, Appellant, v. JAMES McKAGNEY, Executor, etc., Respondent.

ESTATES OF DECEASED PERSONS—COMPETENCY OF TESTATOR—PETITION FOR REVOCATION OF WILL—SUFFICIENCY OF EVIDENCE.—Where the preponderance of the evidence shows that the deceased was of a sound and disposing mind when he executed the will which was admitted to probate, this is sufficient to overcome the suspicion of the petitioner for the revocation of the probate of the will, that the testator was of unsound mind because he erred in stating in his will that the petitioner, his nephew, was sufficiently provided for in the will of another uncle, and therefore expressly omitted to provide for him; and the petition for revocation of the probate was properly denied.

APPEAL from a judgment and order of the Superior Court of Santa Clara County affirming the probate of a will and denying a petition for revocation thereof. M. H. Hyland, Judge.

The facts are stated in the opinion of the court.

James O'Halloran, for Appellant.

James P. Sex, for Respondent.

VAN DYKE, J.—This is an appeal from the judgment and order affirming the probate of the will of Patrick Dougherty, deceased, and denying the petition of Edward Dougherty, the appellant, praying that said probate be revoked and declared of no effect. The record on the appeal contains a bill of exceptions prepared and settled on the motion for new trial of the case.

The main contention on the appeal is, that the decision of the court below is not supported by the evidence, and that on the evidence the petition for revocation of the will should have been granted.

This contention on the part of the appellant is based upon the ground that at the date of the execution of the will, and for a long time prior thereto, said Patrick Dougherty was not of sound and disposing mind, and was incompetent by reason thereof to make a will, and the main contention on the appeal is, that the finding and judgment of the court below, adverse to the petitioner (appellant herein), is not justified by the evidence, but contrary thereto. The will of Patrick Dougherty is dated February 21, 1901. After making several bequests, in the tenth clause the following occurs: "I purposely omit any bequest, gift, or provision for Edward Dougherty, my nephew, now residing in San Francisco, California, because I consider suitable provision has been made for him out of the estate of my deceased brother, John Dougherty." It is contended on the part of the appellant that it was in fact a mistake in his uncle in supposing that provision had been made by his brother, John Dougherty, as the will of the latter, which is also introduced in evidence, shows. The will of John Dougherty bears date March 6, 1892, and contains a clause that if at the death of both Patrick Dougherty and Rosa Dougherty, his wife, to whom he devised property, there should remain undisposed of his real estate, with improvements thereon, in San Jose (describing the same), "then it is my desire that said real estate shall go to my nephew, Eddie Dougherty, although nothing here contained is to be in any way construed, as to hinder or prevent the absolute disposition of said property by said devisees, or either of them, if they so choose." In the testimony of the petitioner, Edward Dougherty, he states: "I cannot account for the provision in the will of Patrick Dougherty, excluding me from a share of his estate on the ground that I was already provided for out of the estate of his brother, John Dougherty. I received not a five-cent piece from John Dougherty's estate; therefore I am of opinion that Patrick Dougherty was of unsound mind when he made his will on February 21, 1901." He added that his uncle was of the age of eighty-four and upwards, and was afflicted with bodily disease and absent-

minded. On cross-examination, however, he says: "I did not visit my uncle or see him from October, 1897, until the day after the death of his wife, which was January, 1901." This is the only testimony in support of the petition to revoke the will. On the other hand, respondent produced witnesses as follows: Edward J. Overfeldt testified that he was a farmer, and lived within two hundred yards of where Patrick Dougherty, deceased, had resided, and was one of the subscribing witnesses to his will; knew him for more than thirty years; met him very often, three or four times a week; sometimes every day; talked with him, visited with him, called at his house sometimes on business, sometimes in a social way, discussed business and social topics; was of the opinion that he was of sound and disposing mind. "He was at all times a shrewd business man. . . . I found him in business to be clearer and more business-like than the average man. I visited him nearly every day during a period of about two and one-half months prior to his death; talked with him for a long period of time; saw no change in him during that time from what he had always been." John S. Barnum testified that he knew Patrick Dougherty for a period of ten years; well acquainted with him during that time; says he had conversations upon ordinary matters and upon business with him. "He was shrewd in driving a bargain, and a man of whom it was hard to get the best. I saw him during the period before making his will. I also saw him afterwards; I saw no change in him; he was as shrewd after the making of his will as before, and was as clear in conversation as he had ever been." Nels Nelson testified that he was employed by the deceased as a farm-hand and lived at his ranch, and they talked about the business of the ranch and everything connected with the farm. "He was able to attend to his farm and manage the same. He knew how to sell the products of his farm to advantage, and discussed ordinary matters of concern as other men did. I called upon him both before and after he executed the will and saw no change in him. He was shrewd in business and knew how to care for his own affairs and to care for them in a business-like manner. I never saw any peculiarities about him or anything that suggested to a person that he was other than of sound and disposing mind." Alex. Anderson testified to an acquaintance extend-

ing over more than twenty years, and he lived only about a quarter of a mile from the deceased. He was fully able to take care of his farm and do business in the ordinary way. "I never saw anything about him that would influence a person to believe that he was of unsound mind. On the other hand, I always found him to be shrewd and business-like and careful in looking after his affairs." Rev. P. J. McGuire, who was the pastor of the church in the city of San Jose, knew deceased for from seven to eight years, during which time he was a parishioner of the witness. "I knew him well, as well if not better than most of my parish people. From my acquaintance and knowledge and meetings with him, and our exchange of calls, I came to an opinion of his soundness of mind; my opinion is, that he was at the time he made or executed his will of sound and disposing mind. I met him on the day on which the will was made. He asked me to send him an attorney, Mr. W. T. Aggeler; this was about four or five hours before the will was made. I did so." Mr. Aggeler testified: "I drew the will of Patrick Dougherty. I drew it at his suggestion and according to his direction. He had read the provisions of the will, and then, in the presence of myself and Mr. Edward J. Overfeldt, signed and declared the same to be his last will and testament." He says: "I saw no difference in him on that day and at that time than I had ever seen, and it is my opinion that he was of as sound a mind then as he ever was during our acquaintance." Respondent's attorney also testified to the same effect with reference to the condition of the mind of the deceased; and also the respondent, Mary Dougherty, who had lived with her uncle for thirteen years; and Patrick Dougherty, a nephew, who had lived with him for five or six years; also James McKagney, the executor, who had known him for fifteen years, and who had business relations with the deceased, and was present at the making of the will. "He directed its making and directed the provisions of it." Here we have nearly a dozen witnesses who testify in substance to the same effect, that the deceased, Patrick Dougherty, was at the time of the making the will of sound and disposing mind. This should, at least, be sufficient to overcome the suspicion of the petitioner that he was of unsound mind, arising from the fact, as he says, that he, the petitioner, was not provided for out of the estate of John

Dougherty, as suggested in the will of his uncle, Patrick Dougherty, deceased.

There being no other questions raised requiring consideration, the judgment sustaining the validity of the will and denying the petition for the revocation of the same should be affirmed.

And it is so ordered.

Angellotti, J., and Shaw, J., concurred.